RICHARD A. UPSTILL, APPELLANT, v. STEPHEN H. KYNER, APPELLEE.

FILED FEBRUARY 25, 1913. No. 17,069.

1. **Judgment:** RES JUDICATA. The rule is well settled that a judgment of a court of competent jurisdiction upon questions directly involved in one suit is conclusive as to those questions in a subsequent action between the same parties.

2. **Waters:** INJUNCTION: EVIDENCE. Record examined, and no competent evidence found. to sustain any of the allegations in plaintiff's petition not covered by a former adjudication between the parties.

APPEAL from the district court for Brown county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*J. B. Smith,* for appellant.

*J. A. Douglas, contra.*

FAWCETT, J.

From a judgment of the district court for Brown county, dismissing his suit for an injunction, plaintiff appeals.

The pleadings in the case are unnecessarily voluminous. So much so that no attempt will be made to set them out in detail. Plaintiff and defendant are the owners of ad-

joining mill properties on Long Pine creek in Brown county. The stream runs from south to north, and the mill of plaintiff is north of that of defendant. Plaintiff commenced the construction of his dam in 1883, and completed the same and erected his mill shortly thereafter. Defendant's grantor constructed the dam and erected the mill now owned by defendant in 1885. Defendant became the owner of the property within a year or two thereafter. The parties have had more or less trouble and litigation ever since that time. The purpose of the present suit may be gathered from the prayer of the petition, which is: "That the defendant be permanently enjoined from continuing the use of any obstructions or placing any obstructions on his said dam or race, and from continuing or raising his dam or race any higher than it was in the year 1887 when defendant's grantor owned and operated said dam and race, and that the defendant may be permanently enjoined from obstructing in any manner the free flow of water in Long Pine creek as it flowed when the defendant's grantor owned and operated said dam and race in the year 1887; and that defendant may be permanently enjoined from impeding in any manner the flow of said water and then releasing it and causing it to flow in large and unusual volumes into the plaintiff's race and dam, and from making any repairs to defendant's dam or race by means of manure or other offensive substances, and for such other and further relief as justice and equity may require."

The contention of defendant is that all of the matters for which plaintiff prays relief in the above prayer were adjudicated between the parties by a decree of the district court for Brown county, entered in a suit between the same parties, April 24, 1905. In that case defendant here was plaintiff, and plaintiff here was defendant. Each was seeking an injunction against the other and each obtained relief in the decree. The pleadings filed and the decree entered in that case were introduced in evidence in this. We have carefully examined them and find that the de-

fendant's plea of *res judicata* is fully established and should be sustained. The prayer of plaintiff's petition in this case is identical with the prayer for affirmative relief in his answer in that case, with the single exception of that portion of the prayer in this case which asks the court to enjoin the defendant from making any repairs to his dam or race by means of manure or other offensive substances. Upon that point the evidence is uncontradicted that in 1909 defendant removed his old dam, which was constructed of wood, earth and various other kinds of material, and built in place thereof a solid and substantial dam of concrete, reinforced with steel cables; and that none of the offensive substances complained of are now used in and about any part of his dam or race. The decree of April 24, 1905, adjudicated all of the matters embraced in plaintiff's prayer in this suit. No appeal was taken from that decree by either party, and, if defendant is violating any of its terms, plaintiff can obtain prompt and full relief in the district court.

We might properly end this opinion here, as we have now disposed of everything specifically contained in the prayer of plaintiff's petition; but, under the prayer for general equitable relief, we will consider the allegations in plaintiff's petition that defendant, by raising his dam from time to time, has created such a pressure of water that for a number of years there has been a flow of water underground, through the sandy formation of the valley, which has extended to plaintiff's dwelling-house and rendered the stone basement thereof damp and unhealthy to such an extent that it has seriously impaired the health of Mrs. Upstill. The evidence shows that plaintiff's residence is 280 feet down stream from defendant's dam. Plaintiff testifies that the ground has a natural and even slope. The stream, after leaving defendant's mill and land, runs in a northwesterly direction for some little distance and then turns and flows almost directly east and passes within from 20 to 30 feet of plaintiff's house. At the point where it passes plaintiff's house it is directly north of the

20

eastern portion of defendant's dam. Bearing in mind the fact that the general course of this stream is north, if we were to draw a straight line from the eastern part of defendant's dam, down grade, due north for 280 feet, we would come to plaintiff's house, and 20 to 30 feet beyond that, and still down grade, we would come to the bed of the stream. The county surveyor was employed by both plaintiff and defendant to make a survey and take certain levels. A plat of this survey with the elevations noted thereon is in evidence and shows that the surface of the stream just below the house is 6½ feet lower than the basement floor in the house. There is no competent evidence in the record that there is any underflow of water between defendant's dam and plaintiff's house. There is nothing but mere conjecture on the part of plaintiff that the dampness in the basement of his house is caused by such underflow. In addition to the lack of evidence of underflow, it seems incredible, if there is any such underflow, that it could affect plaintiff's basement. Water naturally seeks its level. This is true whether it is flowing above or below the surface of the ground. Applying this natural rule or law of gravitation, water leaving defendant's dam and flowing underground down an even slope for 280 feet would not at that point have an elevation of 6½ feet above a clear and unobstructed outlet into a flowing stream 20 to 30 feet below.

Viewed from any standpoint, we think the judgment of the district court is right, and it is

AFFIRMED.